**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RICK STEINMETZ, Derivatively on behalf of Nominal Defendant CHINA NATURAL GAS, INC., | Case No. |
| Plaintiff, | |
| v. | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| QINAN JI, ZHIQIANG WANG, LAWRENCE W. LEIGHTON, FRANK WAUNG, DAVID SHE, CARL YEUNG and YANG XIANG DONG, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| CHINA NATURAL GAS, INC., | |
| Nominal Defendant. | |

## I.      INTRODUCTION

1.      Plaintiff Rick Steinmetz ("Plaintiff"), a longtime shareholder of China Natural Gas, Inc. ("China Natural Gas" or the "Company"), brings this shareholder derivative lawsuit against certain officers and directors of China Natural Gas for breaching their fiduciary duties to the Company from November 2009 to the present (the "Relevant Period").

2.      China Natural Gas is a natural gas operator in China and is involved in the distribution of compressed natural gas through fueling stations owned by its various entities.

3.      During the Relevant Period, China Natural Gas's officers and directors breached their fiduciary duties to the Company by allowing the Company to (i) disguise Company loans to related parties; (ii) hide banking loans from shareholders; (iii) make undisclosed and improper payments to the Chief Executive Officer ("CEO"); (iv) acquire businesses and assets without the proper approval; and (v) issue false and misleading statements to shareholders.

4.      On November 9, 2009, China Natural Gas reported in its Form 10-Q for the

quarter ended September 30, 2009 that it was making changes in internal controls over financial reporting, including recruiting qualified accounting personnel so that the Company would comply with Generally Accepted Accounting Principles ("GAAP") and form "a competent SEC reporting team."  The purpose of this release was to lead shareholders into believing that the Company was making positive steps towards improving its financial disclosures.  But later disclosures by the Company that its financial statements could not be relied upon would reveal that this statement was false and that the Company was not taking the positive steps necessary to improve its financial reporting process.

5.      In January 2010, China Natural Gas made two secret loans (one for $9.9 million and another for $4.4 million) to immediate family members of CEO Qinan Ji ("Ji").  These loans were not disclosed to shareholders nor approved by the Board of Directors.

6.      On February 26, 2010, China Natural Gas entered into a banking loan agreement to borrow $17.7 million.  In an effort to hide the loan and avoid a default under existing debt covenants, the loan was not reported in filings with the Securities and Exchange Commission ("SEC"), even though GAAP required disclosure.

7.      On a March 11, 2010 analyst call, CEO Ji acknowledged that an entity he controlled received $19.6 million in cash in connection with the Company's 2008 acquisition of Lingbao Yuxi Natural Gas Co., Ltd.  Yet this payment was never reported as a related party transaction.

8.      On August 13, 2010 and October 1, 2010, the Company disclosed that senior management had acquired $10.5 million of gas fueling stations and also paid $3.6 million for Hanchun Makou Yuntong Compressed Natural Gas Co., Ltd.  But these transactions had not been approved by the Company's Board of Directors.

9.      On September 21, 2011, the Company disclosed that Defendant Ji had caused the Company to engage in the undisclosed related-party loans, transferring millions of dollars of the Company's money to Ji's relatives and affiliates.  Based on this public disclosure, the NASDAQ immediately halted trading of China Natural Gas shares.

10.     On November 14, 2011, the Company disclosed that the SEC was investigating the Company in connection with the previously undisclosed related-party transaction.

11.     The following day, the Company disclosed that NASDAQ had determined to delist the Company's stock based on the related-party loans and internal control deficiencies.

12.     The Individual Defendants' mismanagement and breaches of fiduciary duty caused China Natural Gas's stock price to lose over 80% of its value between January 2010 and the halt of trading on September 21, 2011, erasing over $180 million in shareholder value. Further, the Company is now the subject of a securities fraud class action in the United States District Court for the District of Delaware for violations of federal securities laws.

13.     Plaintiff brings this derivative action on behalf of the Company to recover damages against the Individual Defendants and to require the Company to reform and improve its corporate governance and internal procedures to protect the Company and its shareholders from a repeat of the damaging events described below.

## II.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over all claims in this case under 28 U.S.C. 1332 because complete diversity exists between Plaintiff and each Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because China Natural Gas is incorporated in Delaware.

## III.    THE PARTIES

### A.    Plaintiff

16.     Plaintiff is a current shareholder of China Natural Gas common stock and has continuously held shares of the Company since November 2009.  Plaintiff is a citizen of Illinois.

### B.    Nominal Defendant China Natural Gas

17.     Nominal Defendant China Natural Gas is a Delaware corporation with its

registered agent located at national Corporate Research, Ltd., 615 South Dupont Highway, Dover, Delaware, 19901. The Company's principal executive offices are located at Building B, 19th Floor, Van Metropolis, 35 Tang Yan Road, Hi-Tech Zone, Xi'an, 710065, Shaanxi Province, China. China Natural Gas engages in the distribution of compressed natural gas in China through fueling stations owned by its various entities. The Company operates through its wholly owned subsidiaries.

18.     China Natural Gas is traded on the NASDAQ under the ticker symbol "CHNG." As of April 27, 2011, there were 21,458,654 shares of China Natural Gas outstanding.

### C.     Individual Defendants

19.      Defendant Qinan Ji has been the Chairman of the Board since 2005.  He also served as China Natural Gas's CEO from May 2006 through October 4, 2011.  Upon information and belief, Ji is a citizen of China.

20.     Defendant David She ("She") was the Company's Chief Financial Officer ("CFO") from February 1, 2010 until December 2010.  Upon information and belief, She is a citizen of China.

21.     Defendant Zhiquang Wang ("Wang") has been a director of the Company since 2006.  Wang is a member of the Board's Audit Committee.  Upon information and belief, Wang is a citizen of China.

22.     Defendant Yang Xiang Dong ("Yang") has been a director of the Company since August 2008.  Upon information and belief, Yang is a citizen of China.

23.     Defendant Carl Yeung ("Yeung") was a director of the Company until he resigned on November 25, 2010.  Upon information and belief, Yeung is a citizen of China.

24.     Defendant Frank Waung ("Waung") has been a director of the Company since November 25, 2010.  Waung is a member of the Board's Audit Committee.  Upon information and belief, Waung is a citizen of China.

25.     Defendant Lawrence Leighton ("Leighton") has been a director of the Company since August 2008.  Leighton is a member of the Board's Audit Committee.  Upon information

and belief, Leighton is a citizen of California.

26.     Defendants Ji, She, Wang, Yang, Yeung, Waung, and Leighton are sometimes referred to herein as the "Individual Defendants."

## IV.   SUBSTANTIVE ALLEGATIONS

### A.   China Natural Gas Is Formed In A Reverse Merger

27.     China Natural Gas is a Chinese company that became public in December 2005.

28.     The Company employed a device called a "reverse merger" to take advantage of the US capital markets. In a reverse merger, a publicly traded shell company acquires a private company seeking to go public. In exchange, the shareholders of the former private company receive a controlling share of the public company.  Reverse mergers allow the private company to be listed on a U.S. stock exchange without undergoing the regulatory scrutiny and mandatory public disclosures that are required in an initial public offering.

29.     Chinese reverse mergers have been the method of choice lately for disreputable stock promoters, low quality auditors, and outright fraud, leading the SEC to issue warnings about investing in companies like China Natural Gas.

30.     On January 25, 2012, the F.B.I. raided the New York Offices of the New York Global Group, which is run by Benjamin Wey, one of the kingpins of the Chinese reverse merger fraud.  *See* "F.B.I. Looks Into Adviser on Chinese Reverse Mergers," N.Y. Times Dealbook, Jan. 27, 2012.

31.     Shielded by the geographic distance of thousands of miles and operating under a regulatory framework that is a world apart from the SEC's oversight, reverse merger companies have few incentives to provide complete and accurate disclosures to American investors.  An August 28, 2010 article in *Barron's* by Bill Alpert and Leslie P. Norton entitled, "Beware This Chinese Export," discusses the enforcement problems that American regulators face when dealing with Chinese companies that trade on U.S. exchanges.  The article states that "[t]he SEC's enforcement staff can't subpoena evidence of any fraudulent activities in China, and Chinese regulators have little incentive to monitor shares sold only in the U.S."

32.     U.S. regulators have finally begun to take notice of the manipulation and fraud endemic in reverse merger companies.  The SEC has recently established a task force to investigate investors' claims regarding the impropriety and fraud of reverse mergers trading on the U.S. markets.  SEC Commissioner Luis A. Aguilar voiced his concerns in an April 4, 2011 speech that "there appear to be systematic concerns with the quality of the auditing and financial reporting" of the reverse merger companies.

33.     On June 9, 2011, the SEC issued an Investor Bulletin warning investors about investing in companies that enter U.S. markets through reverse mergers: "[t]here have been instances of fraud and other abuses involving reverse merger companies." Lori J. Schock, Director of the SEC's Office of Investor Education and Advocacy, was quoted as saying that "[g]iven the potential risks, investors should be especially careful when considering investing in the stock of reverse merger companies."

**B.      The Concealed Related Party Loans**

34.     Xi'an Demaoxing Real Estate Co, Ltd. ("Demaoxing") was formed in November 2007 by close relatives of Defendant Ji.

35.     In January 2010, Shaanxi Xilan Gas Equipment Co., Ltd., one of the Company's major subsidiaries, extended a loan of $9.8 million to Ms. Taoxiang Wang (the "Wang Loan"), who obtained a 40% ownership interest in Demaoxing on January 21, 2010.  Ms. Taoxiang Wang used her 40% ownership interest in Demaoxing and its assets as collateral for the Wang Loan.  On January 26, 2010, the Wang Loan funds were remitted by Shaanxi Xilan to an account of Demaoxing.

36.     Also in January 2010, an entity of Shaanxi Xilan Gas Equipment Co., Ltd., extended a loan of $4.4 million to Shaanxi Juntai Housing Purchase Ltd. (the "Juntai Loan"), which obtained a 30% ownership interest in Demaoxing on January 21, 2010.

37.     Both the Wang Loan and the Juntai Loan gave funds to Demaoxing, a company owned by Defendant Ji's close family members.  These loans were made without the approval of the Company's Board.

38.     In May 2010, the Company reported in its Form 10-Q for the quarter ended March 31, 2010, that it had made loans in the amount of $14.3 million to Shaanxi Juntai Housing Purchase Ltd. and Ms. Taoxiang Wang.  However, the Individual Defendants breached their fiduciary duties by causing or allowing the Company to fail to disclose that the Wang Loan and Juntai Loan were secretly made to Defendant Ji's relatives.

**C.     The February 26, 2010 Bank Loan**

39.     On February 26, 2010, China Natural Gas entered into a bank loan of $17.7 million with Pudong Development Bank Xi'an Branch under which Pudong Development Bank agreed to lend $17.7 million to the Company's subsidiary, Jingbian Liquefied Natural Gas Co., Ltd.  The bank loan was secured by certain assets of the Company's subsidiary Xi'an Xilan Natural Gas Co., Ltd., namely its equipment and vehicles, and Xi'an Xilan Natural Gas Co., Ltd., guaranteed the repayment of the loan.

40.     On March 17, 2010, pursuant to the bank loan, Pudong Development Bank transferred $13.2 million to Jianbiang Liquefied Natural Gas Co., Ltd.

41.     The bank loan substantially increased the Company's outstanding debt and was a material event.  The Individual Defendants breached their fiduciary duties by causing or allowing the Company to fail to disclose the loan in either its Quarterly Report on Form 10-Q for the quarter ended March 31, 2010, or in its Annual Report Form 10-K for 2009 in violation of GAAP.

**D.     The Undisclosed and Improper Payments to Ji**

42.      On a March 11, 2010 analyst call, Defendant Ji acknowledged that an entity he controlled received $19.6 million in cash consideration paid in connection with the 2008 acquisition of Lingbao Yuxi Natural Gas Co., Ltd. (the "Yuxi Acquisition").  This transaction, however, was not reported as a related party transaction.

43.     When questioned, Defendant Ji pointed to three reasons why the cash consideration had been given to a company that he controlled: (1) "out of the concern for reasons up from personal liabilities.  For example, if the owners of the company being acquired … would

know that they have such a large amount of money into their account, … if they have some personal liabilities they have to settle these personal liabilities;" (2) "out of some tax concern by these owners owning this company being acquired;" and (3) "out of some personal safety concern by this owner selling this Lingbao Yuxi Natural Gas Company."

44.     Defendant Ji's acknowledgment prompted analysts' concerns.   Later, the Company would reveal that the SEC had initiated an investigation into the Yuxi Acquisition.

**E.     The Unapproved Acquisition of Business and Assets**

45.     On August 13, 2010, the Company disclosed in its Form 10-Q for the quarter ended June 30, 2010, that senior management, which included Defendant Ji, had proceeded with the acquisition of four natural gas fueling stations, valued at $10.5 million.  These transactions were without preapproval from the Company's board of directors.

46.     Several weeks later, on October 1, 2010, the Company disclosed in a Form 10-K/A filing that senior management, which included Defendant Ji, had also failed to disclose to the Board the $3.6 million acquisition of Hanchun Makou Yuntong Compressed Natural Gas Co., Ltd. in July 2010.

47.     Because the Company failed to implement policies and procedures that would have prevented the Company from completing these unauthorized acquisitions, the Company concluded in its Form 10-K/A filed on October 1, 2010 that its internal disclosure controls and procedures that were in effect on December 31, 2009 were not effective.

**F.     The Company Announces Errors In Financial Reporting**

48.     On November 9, 2009, China Natural Gas reported in its Form 10-Q for the quarter ended September 30, 2009, that the Company was making changes in internal controls over financial reporting, including recruiting qualified accounting personnel so that the Company would comply with GAAP and form "a competent SEC reporting team."  Notably, this Form 10-Q was signed by Defendant Ji.   The disclosure over the changes internal controls led shareholders into believing that the Company was making positive steps towards improving its financial disclosures.  But later disclosures by the Company that its financial statements could

not be relied upon revealed that this statement was false and that the Company was not taking any positive steps to improve its financial reporting process.

49.    The Individual Defendants originally reported that the Company's internal controls were "effective" as of December 31, 2009 in the Company's Form 10-K filed on March 10, 2010.   This Form 10-K was signed by Defendants She, Ji, Wang, Yang, Yeung, and Leighton.   Nevertheless, the Company announced that due to material weaknesses, it would be revising its financial statements.   Specifically, on August 19, 2010, the Individual Defendants caused the Company to file a Current Report on Form 8-K with the SEC, which stated in relevant part:

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

On August 13, 2010, the Board of Directors of China Natural Gas, Inc. (the "Company"), in consultation with management and its Audit Committee, determined that the previously issued financial statements contained in the Company's Annual Report on Form 10-K for the year ended December 31, 2009 and the Quarterly Report on Form 10-Q for the quarter ended March 31, 2010 can no longer be relied upon because of the errors discussed below in those financial statements, and that the Company will restate these financial statements to make the necessary accounting corrections. Our independent auditors have informed us that their reports originally issued related to the financial statements for the year ended December 31, 2009 and to the effectiveness of our internal control over financial reporting for the related periods also should not be relied upon.

As previously disclosed in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2010, the management and the Board of Directors identified a material weakness in internal control over financial reporting for failure to disclose a bank loan in the amount of $17.7 million entered into on February 26, 2010 (the "Bank Loan"). This weakness resulted in the Company's understating its restricted cash by the amount of the Bank Loan.

50.    Following this disclosure about the banking loan, the investment bank Roth Capital downgraded the Company to "sell," citing concerns about the Company's concealment of the Pudong bank loan.

51.    Despite these admitted weaknesses in internal controls, the Individual Defendants continued to breach their fiduciary duties by failing to take corrective action.

G.      **The Nature of the Related Party Transactions Are Revealed**

52.     On September 21, 2011, the Company revealed that Defendant Ji had engaged in undisclosed related-party transactions in violation of GAAP and SEC regulations.   The press release stated in pertinent part:

> The Company's Board of Directors has concluded that the Company's unaudited interim financial statements for the three months ended March 31, 2010 (included in the Company's Quarterly Report on Form 10-Q/A filed with the Securities and Exchange Commission (the "SEC") on October 1, 2010), unaudited interim financial statements for the six months ended June 30, 2010 (included in the Company's Quarterly Report on Form 10-Q/A filed with the SEC on October 1, 2010), unaudited interim financial statements for the nine months ended September 30, 2010 (included in the Company's Quarterly Report on Form 10-Q filed with the SEC on November 15, 2010), and audited financial statements for the fiscal year ended December 31, 2010 (included in the Company's Annual Report on Form 10-K/A filed with the SEC on June 14, 2011) (collectively, the "Subject Financial Statements"), should no longer be relied upon due to a failure to correctly disclose as a related party transaction the Wang Loan (defined below) previously disclosed in the Subject Financial Statements. The Company's Board of Directors has concluded that the Wang Loan was made to parties related to the Company's Chief Executive Officer and Chairman of the Company's Board of Directors, Mr. Qinan Ji, or to benefit those related parties, and that the nature of the Wang Loan had not been properly disclosed to the Company's Board of Directors and Audit Committee, its Independent Registered Public Accounting Firm, Frazer Frost, LLP at the time the Wang Loan was made, and its current Independent Registered Public Accounting Firm, Friedman LLP at the time they were engaged as the Company's new Independent Registered Public Accounting Firm in December 2010. Furthermore, neither of the Loans (defined below) were reported to or approved by the Company's Board of Directors.

53.     The press release also stated that the Board was demanding the replacement of Ji as CEO and the resignation of certain employees involved in concealing the nature of the related party loans.

54.     On this news, NASDAQ halted trading in the Company's stock on September 21, 2011.  NASDAQ stated that trading in China Natural Gas shares would remained halted "until China Natural Gas, Inc. has fully complied with Nasdaq's request for additional information."

55.     On October 12, 2011, the Company announced in a Current Report on Form 8-K that Defendant Ji had resigned and the Board appointed Mr. Shuwen Kang as the Company's Chief Executive Officer.  The press release stated in pertinent part:

**Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers**

On October 4, 2011, the Board of Directors of China Natural Gas, Inc. (the "Company") appointed Mr. Shuwen Kang as the Company's Chief Executive Officer. On the same date, Mr. Qinan Ji resigned as Chief Executive Officer of the Company at the request of the Board of Directors. There was no disagreement between the Company and Mr. Ji at the time of Mr. Ji's resignation as the Company's Chief Executive Officer. Mr. Ji will continue in his position as Chairman of the Company's Board and his compensation will not change from what was previously disclosed.

Mr. Kang is 62 years old. Most recently from 2011, Mr. Kang has been vice president of Xi'an Xilan Natural Gas Co., Ltd. ("Xi'an Xilan"), the variable interest entity of one of the Company's major subsidiaries, and is in charge of Xi'an Xilan's business operations. From 2006 to 2010, Mr. Kang served as senior counsel to Xi'an Xilan, responsible for making strategic and business development plans for the Company. Mr. Kang has extensive experience in the operations and management of the Company and in the natural gas industry in general.

56.     On November 14, 2011, the Company disclosed in its Form 10-Q that the SEC was investigating the Company.  The Company noted that "the SEC has commenced an investigation into the matters surrounding the Wang Loan and the acquisition of Lingbao Yuxi Natural Gas Co., Ltd.  The Company is cooperating with the investigation."

57.     On November 15, 2011, the Company revealed in a Current Report on Form 8-K that the NASDAQ had determined to exercise its discretionary authority and delist the Company's securities.  The press release stated in pertinent part:

**Item 3.01. Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

On November 9, 2011, China Natural Gas, Inc. (the "Company") received a letter from The NASDAQ Stock Market LLC ("Nasdaq") in which the Nasdaq Staff stated that it has determined to exercise its discretionary authority under Listing Rule 5101 and delist the Company's securities. A summary of the reasons are set forth below:

1.      Loans totaling $14.3 million extended by the Company to relatives and affiliates of Mr. Qinan Ji ("Mr. Ji"), the Company's former Chief Executive Officer, current Chairman and largest shareholder for no

business purpose, which benefitted Mr. Ji's relatives and affiliates;

2.     Management's failure to disclose the true nature of the Loans to the Board, Audit Committee, a Special Committee of the Board established to investigate the Loans, and the Company's outside audit firm;

3.     the Company's failure to properly and publicly disclose the related party nature of the Loans in periodic filings with the U.S. Securities and Exchange Commission; and

4.     the lack of adequate internal controls related to the Company's disclosure and financial reporting.

In addition, the Staff stated an additional basis to delist for failure to comply with Listing Rule 5630, which requires the Company's Audit Committee or other independent body of the Board to review all related party transactions.

Accordingly, unless the Company requests an appeal of Nasdaq's determination to delist by November 16, 2011, trading of the Company's shares of common stock will be suspended at the opening of business on November 18, 2011, and a Form 25NSE will be filed with the Securities and Exchange Commission, which will result in the Company's securities being removed from listing and registration on Nasdaq.

On November 14, 2011, the submitted its request to appeal the Nasdaq Staff's determination to the Hearings Panel.

58.     As of the filing of this complaint, trading of the Company's shares remains halted.

## V.     DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.     Fiduciary Duties

59.     By reason of their positions as officers, directors, and/or fiduciaries of China Natural Gas and because of their ability to control the business and corporate affairs of China Natural Gas, the Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage China Natural Gas in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of China Natural Gas and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

60.    Each director and officer of the Company owes to China Natural Gas and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

### B.    Audit Committee Duties

61.    In addition to these duties, the Audit Committee Defendants owed specific duties, under the Audit Committee's Charter to review and approve quarterly and annual financial statements, earnings press releases, and the Company's internal controls over financial reporting. Some of the Audit Committee's responsibilities included:

> 2.    Review the significant accounting principles, policies and practices followed by the Company in accounting for and reporting its financial results of operations in accordance with generally accepted accounting principles ("GAAP").

> 3.    Review the financial, investment and risk management policies followed by the Company in operating its business activities.

> 4.    Review the Company's annual audited financial statements, related disclosures, including the MD&A portion of the Company's filings, and discuss with the independent accountants the matters required to be discussed by Auditing Standard No. 61, including (a) the quality as well as acceptability of the accounting principles applied in the financial statements, and (b) new or changed accounting policies; significant estimates, judgments, uncertainties or unusual transactions; and accounting policies relating to significant financial statement items.

> 5.    Review any management letters or internal control reports prepared by the independent accountants or the Company's internal auditors and responses to prior management letters, and review with the independent accountants the Company's internal financial controls, including the budget, staffing and responsibilities of the Company's financial and accounting staff.

***

11. For each of the first three fiscal quarters and at year end, at a Committee meeting review with management the financial results, the proposed earnings press release and formal guidance that the Company may plan to offer, and review with the independent accountants the results of their review of the interim financial information and audit of the annual financial statements.

12. Review management's analysis of any significant accounting issues, changes, estimates, judgments or unusual items relating to the financial statements and the selection, application and effects of critical accounting policies applied by the Company (including an analysis of the effect of alternative GAAP methods) and review with the independent accountants the reports on such subjects delivered pursuant to Section 10A(k) of the Exchange Act and the rules and regulations promulgated thereunder by the SEC.

*** 

17. Approve all related party transactions, as defined by applicable Nasdaq Rules, to which the Company is a party.

## C.      The Code of Ethics

62.      In addition, the Individual Defendants owed specific duties under the Company's Code of Ethics.  Some of the duties included:

### 4.   KEEP ACCURATE AND COMPLETE RECORDS

We must maintain accurate and complete Company records. Transactions between the Company and outside individuals and organizations must be promptly and accurately entered in our books in accordance with generally accepted accounting practices and principles. No one should rationalize or even consider misrepresenting facts or falsifying records. It will not be tolerated and will result in disciplinary action.

*** 

### 6.   AVOID CONFLICTS OF INTEREST

Our officers, directors and employees have an obligation to give their complete loyalty to the best interests of the Company.  They should avoid any action that may involve, or may appear to involve, a conflict of interest with the Company. Officers, directors and employees should not have any financial or other business relationships with suppliers, customers or competitors that might impair, or even appear to impair, the independence of any judgment they may need to make on behalf of the Company.

-14-

**D.      Control, Access, and Authority**

63.      The Individual Defendants, because of their positions of control and authority as directors and/or officers of China Natural Gas, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the public statements issued by China Natural Gas.

64.      Because of their advisory, executive, managerial, and directorial positions with China Natural Gas, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of China Natural Gas.

65.      At all times relevant, each of the Individual Defendants was the agent of each of the other Individual Defendants and of China Natural Gas, and was at all times acting within the course and scope of such agency

**E.      Reasonable and Prudent Supervision**

66.      To discharge their duties, the officers and directors of China Natural Gas were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of China Natural Gas were required to, among other things:

(a)      refrain from acting upon material inside corporate information to benefit themselves;

(b)      ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(c)      conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)      properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements

about the Company's financial results;

(e)     remain informed as to how China Natural Gas conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(f)     ensure that China Natural Gas was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## VI.   BREACHES OF DUTIES

67.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of China Natural Gas, the absence of good faith on their part, and a reckless disregard for their duties to China Natural Gas and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to China Natural Gas.  The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of China Natural Gas's Board.

68.     The Individual Defendants each breached their duty of loyalty and good faith by allowing the other Individual Defendants to cause, or by themselves causing, the Company to engage in undisclosed related-party transactions, engaging in transactions without Board approval and misrepresenting the Company's financial results and prospects, and by failing to prevent employees and/or officers of the Company from taking such illegal actions.  In addition, as a result of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of securities laws.  As a result, China Natural Gas has expended, and will continue to expend, significant sums of money.

## VII.   CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

69.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

and conspired with one another in furtherance of their liability. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

70.    During all relevant times, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did conceal that: (i) the Company engaged in undisclosed related-party transactions without Board approval; and (ii) the Company's financial results were misrepresented. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

71.    The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, the Individual Defendants caused the Company to issue false and misleading statements regarding China Natural Gas's financial results.

72.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; and (ii) disguise the Company's financial disclosures.

73.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

74.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## VIII.   DAMAGES TO CHINA NATURAL GAS

75.    The Individual Defendants' wrongful conduct was the direct and proximate cause of damages China Natural Gas has suffered, and will suffer, in numerous ways.

76.    The Individual Defendants failed to disclose: (i) that the Company engaged in undisclosed related-party transactions without Board approval; and (ii) the Company's financial results and prospects were misrepresented.  The improper related-party transactions and material financial statement omissions have devastated China Natural Gas's credibility.  China Natural Gas is now the subject of a class action lawsuit, alleging violations of securities laws in connection with the improper financial reporting, false statements, and material omissions.  The Company will face substantial costs, expenses, and a potential adverse verdict in connection with that lawsuit.

77.    As a direct and proximate result of the Individual Defendants' actions as alleged above, China Natural Gas's market capitalization has been substantially damaged.

78.    Further, as a direct and proximate result of the Individual Defendants' conduct, China Natural Gas has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    costs incurred in investigating and defending China Natural Gas and certain officers in the class action lawsuit, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment;

(b)    costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on China Natural Gas's artificially-inflated stock price and inflated growth prospects;

(c)    costs incurred from the loss of the Company's customers' confidence in China Natural Gas's products; and

(d)    damages to the Company due to the false and misleading financial statements that the Individual Defendants caused the Company to file.

79.    Moreover, these actions have irreparably damaged China Natural Gas's corporate image and goodwill.  For at least the foreseeable future, China Natural Gas will suffer from what

is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that China Natural Gas's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## IX.   DEMAND FUTILITY ALLEGATIONS

80.   Plaintiff brings this action derivatively in the right and for the benefit of China Natural Gas to redress injuries suffered, and to be suffered, by China Natural Gas as a direct result of breaches of fiduciary duty, abuse of control, gross mismanagement, unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  China Natural Gas is named as a Nominal Defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

81.   Plaintiff will adequately and fairly represent the interests of China Natural Gas in enforcing and prosecuting its rights.

82.   Plaintiff was a shareholder of China Natural Gas at the time of the wrongdoing of which Plaintiff complains and has been continuously since.

83.   The Board of China Natural Gas currently consists of the following five directors: Ji, Wang, Yang, Waung, and Leighton (the "Director Defendants").  Plaintiff has not made any demand on the Board to institute this action against the Individual Defendants because such demand would be a futile and useless act.

### A.   Demand Is Futile As To Defendant Ji

84.   Defendant Ji faces a substantial likelihood of liability for his individual misconduct.  Ji is a named defendant in a federal class action pending in the United States District Court for the District of Delaware alleging that he and the Company violated § 10(b) of the 1934 Act and Rule 10b-5 when he disseminated or approved false statements.

85.   If Defendant Ji pursued these derivative claims, then that would expose his own misconduct in the class action for violations of the federal securities laws.  This, in turn, would impair the defense of the class action and greatly increase the probability of Defendant Ji's personal liability in the class action.  As such, Defendant Ji is fatally conflicted, and therefore,

unable to render a disinterested decision as to whether the Company should pursue these derivative claims.  Thus, demand is futile as to Defendant Ji.

86.     Additionally, Defendant Ji cannot render an independent decision because he was a high-ranking officer of China Natural Gas during the time period when the wrongdoing occurred.  Defendant Ji is Chairman of the Board and was the Chief Executive Officer of the Company until his resignation in October 2011.   According to relevant portions of the Company's 2011 proxy statement, Defendant Ji is not an independent director pursuant to the requirements of the listing standards of the NASDAQ.  Thus, demand is futile as to Defendant Ji.

87.     Additionally, Defendant Ji is interested because he caused the Company engage in the related party transactions, including the Wang Loan and the Juntai Loan, which benefitted his close family members and himself.  Defendant Ji is also interested because he issued many of the false and misleading statements in the SEC filings, which failed to disclose the true nature of the related-party loans and the Pudong banking loan.  Defendant Ji therefore faces a substantial likelihood of liability for breaching his fiduciary duties to China Natural Gas's shareholders.  Consequently, Defendant Ji cannot disinterestedly consider a demand.

**B.     Demand Is Futile Because The Entire Board Is Beholden To Ji And Cannot Independently Consider A Demand**

88.     As detailed above, Defendant Ji is an interested director.

89.     The Board cannot independent consider a demand to bring suit against Defendant Ji because Ji is a majority shareholder and controls the Board.  Ji has served as the Chairman of the Board since 2005 and served as the Chief Executive Officer from May 2006 through October 2011 where he effectively controlled the Company on a day-to-day basis.

90.     Specifically illustrative of Ji's control over the Board, Defendant Ji is a majority shareholder.  As of April 25, 2011, Ji owned over 3 million shares of Company stock, which represents 14% of the outstanding shares.  Because of his significant holdings in the Company, Ji has a stranglehold on the operations of the Company.

91.     Ji could easily vote any dissenting Board member out of office at the next election if a Board member voted to initiate a suit against him.  No China Natural Gas Board member has the ability to outvote Defendant Ji.  As of April 25, 2011, Defendant Wang owned 2,500 shares; Defendant Yang owned 1,451,250; Defendant Waung owned 0 shares; Defendant Leighton owned 1,250 shares.  Collectively, Defendants Wang, Yang, Waung, and Leighton owned 1,455,000 shares, which represents less than 7% of the outstanding shares.  Defendants Wang, Yang, Waung, and Leighton heavily rely on Ji for votes in all director elections.  Consequently, Defendants Wang, Yang, Waung, and Leighton cannot exercise independent business judgment in deciding whether to bring suit against Ji.

92.     As further evidence of Ji's control over the Company, Ji was able to channel Company money into affiliated companies owned by Ji and channel Company money directly to Ji's close family members through the Wang Loan and the Juntai Loan.

93.     Further, Ji has previously attempted to acquire all of the outstanding shares of common stock of the Company that he and his affiliates did not already own.  On June 30, 2011, Ji announced that he entered into an exclusivity pact with a consortium led by Themes Investment Partners, a New York based China-focused private equity firm.  Ji informed the Board that he intended to work with the consortium to formulate a proposal to acquire all of the outstanding shares of common stock of the Company by means of a going private transaction at a proposed price of $4.25 per share in cash.  This price represented a deep discount to the Company's trading price earlier in the year.  Although a deal was never consummated, Ji continues to seek out alternative sources of funding for the going-private transaction.  If the remaining Board members initiated an action against Ji, it is likely Ji would retaliates against them by removing them from the Board should he succeed in his plans to acquire all of the outstanding shares of the Company.  Thus, demand on the Director Defendants is futile.

**C.     Demand Is Futile As To Audit Committee Defendants Wang, Waung, and Leighton**

94.     Defendants Wang, Waung, and Leighton are members of the Company's Audit Committee.  The Audit Committee is and was required to verify the accuracy of China Natural Gas's financial reporting by adopting, implementing, and overseeing reasonable internal controls and independent monitoring systems to insure the investing public is provided with accurate financial information.

95.     As members of the Audit Committee, Defendants Wang, Waung, and Leighton were responsible for (i) the integrity of the Company's financial statements; (ii) the Company's systems of internal controls regarding finance and accounting as established by management; (iii) the qualifications and independence of the independent registered public accounting firm; (iv) the performance of the Company's independent registered public accounting firm; (v) the Company's auditing, accounting, and financial reporting processes generally; and (vi) compliance with the Company's ethical standards for senior officers and all personnel. Defendants Wang, Waung, and Leighton reviewed and approved China Natural Gas's false and misleading filings with the SEC that misrepresented the related party loans and self-dealing by the Company's CEO.  Defendants Wang, Waung, and Leighton, as members of China Natural Gas's Board, each knew, or consciously disregarded, that the public statements in the filings with the SEC were materially false and misleading.  These Defendants, however, failed to correct this materially false and misleading information and committed GAAP violations.   As such, Defendants Wang, Waung, and Leighton face a substantial likelihood of liability.  Thus, demand is futile as to Defendants Wang, Waung, and Leighton.

**D.     Demand Is Futile As To All Of The Director Defendants For Additional Reasons**

96.     The Director Defendants, as members of China Natural Gas's Board, each knew, failed to act in the face of a known duty to act, and/or were grossly negligent when they allowed the Company to issue false and misleading statements about the related party transactions.  The Director Defendants knowingly, with conscious disregard, and/or gross negligence participated

in the dissemination of this deceptive information.  Although the Company later revealed the existence of the Wang Loan and the Juntai Loan, the Director Defendants breached their fiduciary duty by failing to disclose that the loans were secretly made to Defendant Ji's relatives. Thus, demand is futile as to the Director Defendants.

97.     The Director Defendants, as members of China Natural Gas's Board, each had a duty to ensure that reliable systems of financial controls and reporting were in place at the Company and functioning properly.  The Director Defendants reported that the Company's internal controls were "effective" as of December 31, 2009 in the Company's Form 10-K filed on March 10, 2010.  But then on August 19, 2010, the Company revealed in a Form 8-K filed with the SEC that its previously issued financial statements could no longer be relied upon and that the Company identified a material weakness in internal control over financial reporting. Specifically, the Company revealed that it had failed to disclose the Pudong bank loan in the amount of $17.7 million entered into on February 26, 2010.  The Director Defendants each knew, failed to act in the face of a known duty to act, and/or with gross negligence ignored the fact that the Company lacked adequate internal controls.  Despite this, the Director Defendants took no steps to avert or correct the situation.  The Company's lack of adequate internal controls allowed the materially false and misleading information regarding the Company's financial reporting to be disseminated to shareholders.  Thus, the Director Defendants are each subject to a substantial likelihood of liability.  Thus, demand is futile as to the Director Defendants.

98.     The Director Defendants were responsible under the Company's Code of Ethics to keep accurate and complete records and also to avoid conflicts of interests.  Despite these responsibilities, the Director Defendants breached their fiduciary duties by allowing Defendant Ji to engage in the related-party transactions that benefitted his close family members and himself. Thus, the Director Defendants face a substantial likelihood of liability and cannot disinterestedly consider a demand.

99.     If China Natural Gas's officers and directors are protected against personal liability for their acts of mismanagement, abuse of control, and breaches of fiduciary duties

alleged in this Complaint by Directors and Officers Liability Insurance ("D&O Insurance"), they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders.  However, Plaintiff is informed and believes that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by China Natural Gas against the Individual Defendants, known as the "insured versus insured exclusion."  As a result, if the Director Defendants were to sue themselves or certain of the officers of China Natural Gas, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. Therefore, the Director Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O insurance policy.

100.    Under the factual circumstances described herein, the Individual Defendants are more interested in protecting themselves than they are in protecting China Natural Gas by prosecuting this action.  Therefore, demand on China Natural Gas and its Board is futile and is excused.

101.    China Natural Gas has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing.  Yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct.  Thus, the Director Defendants are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty

102.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

103.    Defendants owed and owe China Natural Gas fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe China Natural Gas the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

104.    Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

105.    Defendants each knowingly, recklessly or negligently signed or approved the issuance of false annual and quarterly financial statements that misrepresented and failed to disclose the related party transactions.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

106.    As a direct and proximate result of these Individual Defendants' failure to perform their fiduciary obligations, China Natural Gas has sustained significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

107.    Plaintiff, on behalf of China Natural Gas, has no adequate remedy at law.

## COUNT II

### Against All Defendants for Waste of Corporate Assets

108.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

109.    The wrongful conduct alleged regarding the issuance of false and misleading statements, beginning in January 2010, was continuous, connected, and on-going throughout the applicable time period.  It resulted in continuous, connected, and on-going harm to the Company.

110.    As a result of the misconduct described above, the Individual Defendants have caused China Natural Gas to incur substantial legal liability as the Company will incur significant legal costs defending itself as a result of the Individual Defendants' misconduct and unlawful actions.

111.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

112.    Plaintiff, on behalf of China Natural Gas, has no adequate remedy at law.

## COUNT III

### Against Defendants for Unjust Enrichment

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.    Defendants were unjustly enriched at the expense of the Company by receiving incentive compensation based on the stock performance of China Natural Gas common stock.

115.    To prevent Defendants' unjust enrichment, the Court should order these Defendants to disgorge to the Company all the proceeds they received from their wrongful conduct.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against all the Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, aiding and abetting breaches of fiduciary duty, waste of corporate assets, and unjust enrichment;

B.    Directing China Natural Gas to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect China Natural Gas and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following corporate governance policies:

- a proposal to strengthen the Board's supervision of the Company's CEO and of any related-party transactions;

- a provision to permit the shareholders of China Natural Gas to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of China Natural Gas's directors, executives, and other employees;

- a proposal prohibiting insiders from trading China Natural Gas securities based upon material non-public information;

- a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal controls and auditing matters; and

- a provision to appropriately test and then strengthen the internal audit and control functions;

C.    Awarding to China Natural Gas restitution from the Individual Defendants, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

D.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## XI.    JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  February 8, 2012

**COOCH AND TAYLOR P.A.**

*/s/ Blake A. Bennett*

Blake A. Bennett (#5133)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, Delaware 19801
(302) 984-3800
*Attorneys for Plaintiff*

**OF COUNSEL:**

**CHAPIN FITZGERALD**
  **SULLIVAN BOTTINI, LLP**
Francis A. Bottini, Jr., Esquire
Keith M. Cochran, Esquire
550 West C Street, Suite 2000
San Diego,  CA  92101
(619) 241-4807